|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF PUERTO RICO | |
| LUIS COSTAS-ELENA, HAZEL RUSSELL-MCMILLAN, and their conjugal partnership, | |
| Plaintiffs, | Civil No. 08-2403 (JAF) |
| v. | |
| MUNICIPALITY OF SAN JUAN, FERNANDO CORDERO, ANDRÉS RIVERA, | |
| Defendants. | |

**OPINION AND ORDER**

Plaintiffs sue Defendants for damages and seek injunctive and declaratory relief under 42 U.S.C. § 1983 for violations of their rights under the Fourth, Fifth, and Fourteenth Amendments and the Privileges and Immunities Clause of the U.S. Constitution.[1]  (Docket

---

[1] Plaintiffs originally also sued their neighbors, Henry Paredes and Carmen Despradel and their conjugal partnership (together, "Neighbors"), whom we dismissed based on our finding that Neighbors were not state actors under 42 U.S.C. § 1983. (Docket No. 66.) Because we dismissed all federal claims against Neighbors, we dismissed the attendant supplemental claims arising under Puerto Rico law (Docket No. 1) and Neighbors' counterclaims against Plaintiffs, also based on Puerto Rico law (Docket No. 21). Our dismissal also rendered moot Neighbors' claim against third-party-defendant Puerto Rico Electric Power Authority ("PREPA") (Docket No. 26) and PREPA's derivative counterclaim against Neighbors (Docket No. 37) and cross-claim against Defendants (Docket No. 38). Additionally, it rendered moot Neighbors' cross-claim against Defendants (Docket No. 24), though we retained Defendants' cross-claim against Neighbors. Neighbors now move to amend their answer to that cross-claim (Docket No. 76), and Defendants oppose (Docket No. 90). Because we herein dismiss Plaintiffs' claims against Defendants, rendering Defendants' cross-claim moot, we find Neighbors' motion moot.

In deciding the dismissal against Neighbors, we did not consider whether Plaintiffs had alleged

No. 1.)  They also allege violations of Puerto Rico law.  (Id.)  Defendants move under Federal Rule of Civil Procedure 12(c) to dismiss Plaintiffs' complaint, arguing that this court lacks subject-matter jurisdiction due to Plaintiffs' failure to exhaust Commonwealth remedies and that Plaintiffs otherwise "fail[ ] to state any actionable federal or constitutional claims."[2]  (Docket No. 71.)  Plaintiffs oppose, arguing that Commonwealth remedies would be inadequate to vindicate their relevant constitutional rights and that they have pleaded viable constitutional claims.  (Docket Nos. 84; 87.)

We agree with Defendants that Plaintiffs' Fifth Amendment taking and Fourteenth Amendment due process claims are unripe, given Plaintiffs' failure to exhaust available Commonwealth remedies.  We, therefore, lack subject-matter jurisdiction over those claims.  We also agree that Plaintiffs otherwise have failed to state a claim under 42 U.S.C. § 1983, as

---

conduct amounting to the claimed constitutional violations.  As we do so now—and find that Plaintiffs did not—we note that the same reasoning expressed herein would have sufficed to dismiss Plaintiffs' federal claims against Neighbors.

Finally, Plaintiffs move to amend their complaint, expressing an intent to cure the defects that led us to dismiss their claims against Neighbors.  (See Docket No. 68.)  Because we herein dismiss Plaintiffs' claims on independent grounds, we find that it would be futile for Plaintiffs to amend their complaint for that expressed purpose and, therefore, deny their motion to amend.  See Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 627-28 (1st Cir. 2000) (stating that a court may deny leave to amend where amendment would be futile).

[2] Defendants also move under Federal Rule of Civil Procedure 12(b) (Docket No. 71), but because they have already answered Plaintiffs' complaint (Docket Nos. 22; 30), that motion is untimely.  In addition, Defendants move to dismiss for discovery violations (Docket No. 78), and Plaintiffs oppose (Docket No. 80).  Neighbors file a response in support of Defendants' motion (Docket No. 81), and Plaintiffs oppose that response (Docket No. 86).  That motion is now moot, however, as we dismiss Plaintiffs' claims against Defendants on other grounds discussed herein.

they allege no conduct that constitutes a violation of their rights under either the Fourth Amendment or the Privileges and Immunities Clause. We briefly explain.

# I.

# Background

We note here only the facts necessary to the analysis below; we provided a full factual recitation in a previous order (Docket No. 52).

Plaintiffs' complaint arises out of a tree trimming requested by Neighbors and executed by Defendants. (Docket No. 1 at 12.) Neighbors obtained a permit from the Puerto Rico Department of Natural and Environmental Resources ("DNER") for removal of a tree on their property, which DNER found was "causing damage to neighboring structures."[3] (Docket No. 59-6.) Neighbors then applied for San Juan's routine tree-trimming services from its Office of Emergency Management, which required Neighbors to submit the DNER permit along with their application. (Docket No. 62-2.) The permit itself sets out the procedure for its execution. (See Docket No. 59-6.) Neighbors paid $500 for the municipality's service and signed an

---

[3] The DNER is an executive agency empowered by 12 L.P.R.A. § 196 (2007) to approve the cutting and removal of all trees in Puerto Rico. See P.R. Admin. Reg. 5922 § 3.01. Each request for a permit is evaluated by forest technicians at the department. Id. § 3.03. Plaintiffs here do not challenge the issuance of the permit, which they themselves filed with the court. (See Docket Nos. 59-6; 84 at 38.) We note that this permit (Docket No. 59-6) was not included with the pleadings. While an analysis under Rule 12(c) normally cannot encompass matters outside the pleadings, the First Circuit has recognized an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009).

Civil No. 08-2403 (JAF)                                                                                          -4-

agreement holding the municipality harmless for any liabilities arising therefrom. (See Docket No. 59-10.)

Defendants arrived at Neighbors' property to provide the service, and Neighbors directed them to the tree to be cut.[4] (Docket No. 1 at 12.) The tree they cut was situated on the dividing line between Plaintiffs' and Neighbors' properties.[5] (Id.) As Defendants worked, branches and debris fell onto Plaintiffs' land, causing damage to Plaintiffs' garden and rendering Plaintiffs unable to enter that bit of land—1250 square feet at the corner of their land—for a number of days. (Id. at 12-14.) Plaintiffs claim that they tried to intervene, asking Defendants to produce the permit authorizing the tree trimming. (Id. at 13.) Defendants, who were acting on authority from Neighbors to cut their tree, responded that they had no duty to provide a permit to Plaintiffs. (Id. at 12.)

Plaintiffs did not file suit in Commonwealth court to claim compensation for their loss. (See Docket No. 84 at 37-38.) Instead, they brought the instant suit, claiming the constitutional violations outlined above. (Docket No. 1.)

---

[4] Plaintiffs argue that the tree actually cut was a marker tree belonging to both Plaintiffs and Neighbors. That being the case, Plaintiffs argue, Defendants had no authority to cut it under a permit specific to Neighbors' trees. (Docket No. 59 at 11-12.)

[5] A marker tree, situated on the boundary between two separately-owned pieces of land, constitutes joint property under Puerto Rico law, such that one owner cannot remove the tree without the consent of the other. See 31 L.P.R.A. § 1805 (1993).

## II.

## **Analysis**

### A.   **Standard Under Rule 12(c)**

We grant a motion for judgment on the pleadings only when the uncontested facts in the pleadings conclusively establish the movant's entitlement to judgment. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006). Dismissal is proper at this stage where a plaintiff "fail[ed] to state a claim upon which relief can be granted" or for any claim over which we lack subject-matter jurisdiction. See Fed. R. Civ. P. 12(h)(2)(b), (h)(3).

A movant raises a factual challenge to our subject-matter jurisdiction by contradicting the "jurisdictional facts" that a plaintiff alleges. Valentín v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). The party invoking the court's jurisdiction bears the burden of proving its existence. See Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003).

In deciding a motion for failure to state a claim under Rule 12(c), "[w]e view the facts contained in the pleadings in the light most flattering to the nonmovants . . . and draw all reasonable inferences therefrom in their favor." Aponte-Torres, 445 F.3d at 54 (applying standard for Rule 12(b)(6) motions to a Rule 12(c) motion). But mere legal conclusions "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). The complaint must demonstrate "a plausible entitlement to relief" by alleging facts that directly or inferentially support each material element of some legal claim. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

"Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 559) (internal quotation marks omitted).

**B.     Takings**

A plaintiff claiming a taking in violation of the Fifth Amendment must show that the government took his property for public use without just compensation. See U.S. Const. amend. V. Where a plaintiff has not sought compensation from the government, he has not yet been deprived of compensation. See García-Rubiera v. Calderón, 570 F.3d 443, 451 (1st Cir. 2009). His claim is, therefore, unripe, and we lack subject-matter jurisdiction over it. Id.

A plaintiff avoids that result by showing that resort to the government's remedies would be futile—given that the remedies are unavailable to him or otherwise inadequate—thereby assuring us that his deprivation is complete and that his claim is, therefore, ripe for adjudication in this court. Id. at 453. To do so, however, he must "carry the heavy burden" of proving the unavailability or inadequacy of a state remedy. Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002); see also id. at 146-50 (holding that showing uncertainty as to whether an inverse condemnation proceeding exists does not satisfy plaintiff's burden to prove unavailability of the state remedy).

In the case at hand, Plaintiffs state that they have not sought remedy from the Commonwealth, alleging that to do so would be futile. (Docket No. 84.) They claim that Puerto Rico law provides no means for compensating the particular deprivation they

suffered—a temporary loss of the use and enjoyment of their garden. (Id. at 38.) But they cite no authority showing that landowners in their position have resorted to Commonwealth remedies and come away empty-handed. (Id.) In fact, Plaintiffs acknowledge First Circuit precedent finding that adequate post-deprivation procedures exist for takings in Puerto Rico. (See id. at 37 n.74.) We, therefore, find speculative Plaintiffs' argument that a Commonwealth recourse is inadequate. Thus, Plaintiffs have failed to show that they have been denied just compensation and that their takings claim is ripe for adjudication.

**C.     Due Process**

The Supreme Court found that the ripeness analysis for Fifth Amendment takings claims extends to the alternate theory of relief for the same deprivation as a violation of substantive due process. Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 200 (1985); accord Deniz, 285 F.3d at 149. Therefore, based on the reasoning laid out in Part II.B, Plaintiffs' substantive due process claims are unripe for adjudication, and we lack subject-matter jurisdiction over it.

As for procedural due process, the Constitution generally requires states to afford owners prior notice and an opportunity to be heard before depriving them of their property. United States v. James Daniel Good Real Prop., 510 U.S. 43, 53 (1993). But "where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997). When the deprivation at issue is the product of a state official's violation of the

authority granted him, negligent conduct, or otherwise a violation of established rules, pre-deprivation process is deemed impossible. Zinermon v. Burch, 494 U.S. 113, 128 (1990). In that case, the availability of statutory post-deprivation hearings or tort remedies satisfies procedural due process. Id.

Here, the deprivation of Plaintiffs' property was the result of conduct that was unauthorized by the DNER permit. The official authorization was to cut a tree wholly situated on Neighbors' property. Thus, pre-deprivation proceedings regarding Plaintiffs' property would have been impossible, as the interference with same was unforeseen by the state authorization at issue. Accordingly, procedural due process requires only the availability of post-deprivation remedies, including Commonwealth tort remedies, to redress Plaintiffs' loss. See Zinermon, 494 U.S. at 128. To the extent that Plaintiffs maintain that they, nevertheless, have been deprived of such remedies, in line with their takings and substantive due process claims, we find any such claim unripe for the same reasons outlined above. We, therefore, lack subject-matter jurisdiction over Plaintiffs' claim that they have been deprived of post-deprivation relief, the procedural due process to which they are entitled.

**D.    Fourth Amendment**

Plaintiffs allege that Defendants' temporary interference with 1250 square feet at the corner of their real property was an unreasonable seizure prohibited by the Fourth Amendment. (Docket No. 1.) We need not decide whether this interference amounted to a "seizure" under the Fourth Amendment as we, nevertheless, find that any such seizure was reasonable.

Reasonableness is the "ultimate touchstone of the Fourth Amendment." Michigan v. Fisher, 130 S. Ct. 546, 548 (2009) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). The reasonableness of a seizure is determined by a "careful balancing of governmental and private interests." Soldal v. Cook County, 506 U.S. 56, 71 (1992) (quoting New Jersey v. T.L.O., 469 U.S. 325, 341 (1985)). We note that the First Circuit has not dealt directly with the reasonableness of a property seizure in a civil context like the one before us—the dearth of such claims is but one indicator of how ill-suited the Fourth Amendment is to the situation at bar.

In order to balance the Plaintiffs' interest that is protected by the Fourth Amendment, we must focus on the only relevant alleged violation, the seizure. A seizure occurs under the Fourth Amendment when the government causes some "meaningful interference" with an individual's "possessory interest" in his private property. United States v. Jacobsen, 466 U.S. 109, 113 (1984). Here, Plaintiffs' interest in the property at issue is that of the land itself—not the trees or vegetation, which are mere attachments to the land with no independent identity under Puerto Rico property law. See 31 L.P.R.A. §§ 1041–1043; see also, e.g., Rullán v. Colón, 50 P.R. 454 (1936) (noting that unharvested coffee are immovables and cannot be personal property). Thus, the only "possessory" interest affected by Plaintiffs' version of the facts was their interest in unfettered entry onto the portion of land on which city workers let fall debris and otherwise prevented entry during the tree trimming.

In balancing the public and private interests at stake here, we consider the relative severity of the alleged seizure. While we are sympathetic that Plaintiffs were deprived access

to a portion of their land, however briefly, we cannot but characterize this as a minor affliction compared to those grievances for which Fourth Amendment protection ordinarily is invoked. Fourth Amendment seizures of premises often involve the seizure of a home during the procurement or execution of a criminal search warrant. See, e.g., Illinois v. McArthur, 531 U.S. 326 (2001). And the few cases we find analyzing premises seizures in a civil context involve possessory interests far greater than those claimed here by Plaintiffs. For example, the Eighth Circuit considered a case in which the government printed maps of public hiking trails that mistakenly marked the plaintiff's private land as public. Presley v. City of Charlottesville, 464 F.3d 480 (4th Cir. 2006). Because the maps caused members of the public routinely to tread across the plaintiff's land, the court found that government action akin to the granting of a public easement. See id. at 495.

The Fifth Circuit considered a situation in which the government condemned and demolished vacant apartment buildings belonging to the plaintiffs in that case. Freeman v. City of Dallas, 242 F.3d 642 (5th Cir. 2001). Despite that comparatively "meaningful" interference with those plaintiffs' possessory interest in their buildings, the court found the seizure reasonable. See id. at 653-54 (suggesting that when the government conduct at issue is the "civil administrative and regulatory enforcement of laws enacted pursuant to the traditional police power," a showing of unreasonableness under the Fourth Amendment is a heavy burden).

With this in mind, we weigh Plaintiffs' interest in unfettered access to a portion of their land against the public interest served by the city workers' brief occupation of that land. We

note that Defendants in this case were performing a routine municipal service, ordinarily deployed to abate some nuisance vegetation that threatens powerlines or, as in this case, nearby structures. Given that routine safety function, and the associated costs, we find a strong and legitimate public interest in allowing city workers to provide this service as expediently as possible. While we agree with Plaintiffs that a strategically-placed tarp or covering might have prevented this particular result, we find that such measures clearly would hinder this public interest in swift action.

In sum, we find that the interference Plaintiffs suffered here was slight, limited as it was in time, place, and purpose. And the public interest in allowing city workers to trim trees in accordance with established procedures—procedures that do not require laying a tarp before performing their work—is great.[6] Given this balance, Plaintiffs have not described an interference that amounts to an unreasonable seizure violating the Fourth Amendment.

### E. Privileges and Immunities

The Privileges and Immunities Clause prohibits a state government from discriminating against nonresidents of that state on matters bearing on certain fundamental rights. See U.S. Const. art. IV, § 2, cl. 1; Silver v. Garcia, 760 F.2d 33, 36 (1st Cir. 1985). The Puerto Rico Foreign Relations Act, 48 U.S.C. § 737, extended that prohibition to Puerto Rico. Thus, the Commonwealth may not exercise a classification based on residency that bears on those

---

[6] That the city workers technically violated the authorization given them is of no consequence to this analysis under the Fourth Amendment. The question is what was reasonable given the authority they believed they had—in this case, the authority to trim the particular tree identified by Neighbors.

fundamental rights. A nonresident of Puerto Rico denied benefits due to such a classification—such that a resident of Puerto Rico would not have suffered the same denial—may claim relief under § 737. See United Bldg. & Constr. Trades Council v. Camden, 465 U.S. 208, 217 (1984) (finding that only nonresidents have standing to sue the relevant state for violations of the Privileges and Immunities Clause).

The fundamental defect with Plaintiffs' claim under § 737 is that they are residents of Puerto Rico. Luis Costas-Elena attested to his residency in their complaint (Docket No. 1 at 19), and we otherwise gather from the complaint that he resides with his wife (see id. at 10-14). Beyond that fundamental defect, Plaintiffs failed to point out any classification Defendants made on the basis of residency, instead alleging that homeowners generally suffer like treatment from Defendants. (See Docket No. 1.) Given these defects, we find that Plaintiffs have failed to state a claim under § 737.

### F.    Supplemental Jurisdiction

As we dismiss Plaintiffs' federal claims, we decline supplemental jurisdiction over their claims arising under Puerto Rico law. See 28 U.S.C. § 1367(c)(3).

## III.
## Conclusion

We have before us an ordinary tort suit involving an acrimonious, longstanding dispute between neighbors over vegetation lining their properties. Section 1983 simply does not cover a dispute of this kind. Indeed, Plaintiffs' attempt to cloak this as a § 1983 action offends the

very nature of that provision—a tool to eradicate the grave constitutional violations that erode the fundamental rights and liberties of our society. In short, Plaintiffs must seek resolution of their grievances from the Commonwealth, from which their rights under tort law arise.

For the foregoing reasons we hereby **GRANT** Defendants' motion (Docket No. 71) and **DISMISS** all claims in Plaintiffs' complaint (Docket No. 1). We **DENY** as **FUTILE** Plaintiffs' motion to amend their complaint (Docket No. 68). We **DENY** as **MOOT** Neighbors' motion for leave to amend their answer (Docket No. 76) and Defendants' motion to dismiss for discovery violations (Docket No. 78). And we **NOTE** Plaintiffs' supplemental motion supporting their opposition to Defendants' motion to dismiss (Docket No. 87).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 20th day of May, 2010.

                                                                    s/José Antonio Fusté
                                                                    JOSE ANTONIO FUSTE
                                                                    Chief U.S. District Judge